# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JOSEPH SMITH                                         CIVIL ACTION

VERSUS                                               NO.  09-3689

BURL CAIN, WARDEN                                    SECTION "J"(2)


## REPORT AND RECOMMENDATION

This matter was referred to the undersigned United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DENIED** and **DISMISSED WITH PREJUDICE**.

---

[1]Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

# I.    STATE COURT PROCEDURAL BACKGROUND

The petitioner, Joseph Smith, is incarcerated in the Avoyelles Correctional Center in Cottonport, Louisiana.[2]  On September 29, 2003, Smith was charged by bill of information in Orleans Parish with two counts of armed robbery and one count of aggravated battery.[3]  The Louisiana Fourth Circuit Court of Appeal summarized the facts of the case in relevant part as follows:

> Early on the morning of July 20, 2003, Mickey Terry was robbed at an ATM machine located at the corner of Napoleon and S. Claiborne Avenues.  Shortly thereafter on the same morning, Joseph Lee was robbed at a gas station located at the corner of S. Claiborne Avenue and Milan Street. . . .
> Mr. Terry testified that on the morning of the robbery, which occurred before dawn, he drove to the Bank One branch located at the corner of S. Claiborne and Napoleon Avenues to deposit a check at the ATM machine.  Mr. Terry explained that there were separate entrances to the bank's drive-up teller windows and the ATM machine, and he inadvertently entered the one for the teller windows.  He testified that he parked his car in the teller lane and walked over to the ATM machine located at the edge of the bank property next to large ligustrum bushes.  Mr. Terry testified that he deposited his check and then decided to withdraw $20.00 from the machine.  He stated that while he was waiting for the machine to give him his money, a man he identified as the defendant came from behind the bushes and started walking toward him.  He stated that the defendant was slouching as he walked.  Mr. Terry indicated that although the area was not well lit, there was a light at the ATM machine.  He testified that the defendant asked him for a cigarette, and he told the defendant to get away from him.  Mr. Terry stated that the money popped out of the machine as the defendant reached him, whereupon the defendant

---

[2]Rec. Doc. No. 13.

[3]St. Rec. Vol. 1 of 13, Bill of Information, 9/29/03.

2

drew a gun and threatened to hit him in the head with it if he did not give him the money from the machine. Mr. Terry complied, and the defendant hit him anyway. Mr. Terry threw an arm up to defend himself, and the blow fell on his arm and the back of his head. Mr. Terry testified that he then ran toward the bushes, while the defendant ran backward toward Napoleon Avenue, pointing the gun at him and tripping a few times over obstructions in the parking lot until he reached Napoleon, where he turned and fled. . . .

Mr. Lee testified he had gotten off of work at 6:00 a.m. on July 20 and stopped for gas at the BP station at S. Claiborne and Milan. He testified that while he was pumping gas, a man walked past him and entered the convenience store at the station, and then another man whom he identified as the defendant walked up to him and demanded that he give him money. Mr. Lee testified he was not really paying attention and he hesitated, and the defendant lifted his shirt, showing a gun in his waistband, and again demanded money. Mr. Lee stated that the defendant pulled the gun and "racked" it. Mr. Lee pulled out his wallet and gave the defendant his money, which he estimated to be no more than $20. Mr. Lee stated that the defendant then told him not to move, and began backing away while pointing the gun at him. Mr. Lee testified that as the defendant crossed one side of S. Claiborne, Mr. Lee walked to his truck, opened it, and pulled out his own gun. Mr. Lee fired twice, missing him both times, and the defendant fled. Mr. Lee testified he could not follow the defendant because he had thrown his keys in the truck when he reached for the gun. Instead, he waited at the gas station until police officers arrived.

State v. Smith, 888 So.2d 1169 (La. App. 4th Cir. 2004) (Table); State Record Volume 6 of 13, Fourth Circuit Opinion, 2004-KA-0846, pages 2-5, December 1, 2004.

Smith was tried before a jury on November 17, 2003, and he was found guilty of two counts of armed robbery and not guilty of aggravated battery.[4] After two hearings

---

[4] St. Rec. Vol. 1 of 13, Trial Minutes (2 pages), 11/17/03; St. Rec. Vol. 2 of 13, Trial Transcript, 11/17/03.

on January 9 and 16, 2004, the state trial court found Smith to be a second felony offender.[5]  The court sentenced Smith on February 12, 2004, to serve 49 years and six months in prison as a second offender for the first armed robbery and to serve 30 years in prison on the second armed robbery count.[6]  Both sentences were imposed without benefit of parole, probation, or suspension of sentence.  The court also denied Smith's motion to reconsider the sentence.

On direct appeal, Smith's appointed counsel requested an errors patent review regarding the trial court's failure to arraign Smith after the aggravated battery charge was amended to correct the name of the victim.[7]  Counsel also urged two other claims: (1) The state trial court erred in denying defendant's motion to suppress the identifications based on the tainted and suggestive line-up. (2) The evidence was insufficient to prove armed robbery.  On December 1, 2004, the state appellate court affirmed the convictions and sentences.[8]

---

[5]St. Rec. Vol. 1 of 13, Multiple Bill Hearing Minutes, 1/9/04; Multiple Bill Hearing Minutes, 1/16/04; St. Rec. Vol. 2 of 13, Multiple Bill Hearing Transcript, 1/16/04.

[6]St. Rec. Vol. 1 of 13, Sentencing Minutes, 2/12/04; St. Rec. Vol. 2 of 13, Sentencing Transcript, 2/12/04.

[7]St. Rec. Vol. 6 of 13, 4th Cir. Opinion, 2004-KA-0846, 12/1/04 Appeal Brief, 2004-KA-0846, 8/25/04.

[8]St. Rec. Vol. 6 of 13, 4th Cir. Opinion, 2004-KA-0846, 12/1/04.

The Louisiana Supreme Court denied Smith's subsequent writ application without reasons on January 9, 2006.[9] Smith's conviction became final 90 days later, on April 9, 2006, or the following business day, Monday, April 10, 2006, when he did not file a writ application with the United States Supreme Court. Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1); La. Code Crim. P. art. 13 (weekends and holidays not included in a calculation of period when it would otherwise be the last day of the period).

On May 31, 2006, Smith filed an application for post-conviction relief in the state trial court raising three grounds for relief:[10] (1) Counsel gave ineffective assistance when he failed to move for post-verdict judgment of acquittal. (2) Counsel gave ineffective assistance when he failed to subpoena defense witnesses and medical evidence which could have shown that he could not have run from the crime scenes.

_____

[9]State v. Smith, 918 So.2d 1038 (La. 2006); St. Rec. Vol. 8 of 13, La. S. Ct. Order, 2005-KO-1253, 1/9/06; La. S. Ct. Writ Application, 05-KO-1253, 5/13/05 (postmarked and signed 12/30/04); St. Rec. Vol. 1 of 13, La. S. Ct. Letter, 5/13/05 (postmark 12/30/04).

[10]St. Rec. Vol. 9 of 13, Application for Post-Conviction Relief, 5/31/06.

After counsel was appointed, the state trial court held an evidentiary hearing on August 31, 2007, to consider the ineffective assistance of counsel claim.[11]  On October 12, 2007, the court granted Smith a new trial on the basis of ineffective assistance of counsel for his failure to subpoena Smith's medical records from his prior knee surgeries.[12]

The State filed a writ application with the Louisiana Fourth Circuit seeking review of the trial court's order.[13]  On January 3, 2008, the appellate court reversed the order granting the new trial.[14]  The court found that the failure to subpoena the medical records was part of counsel's trial strategy and that the records did not establish that Smith was incapable of running.  Smith's counsel sought rehearing, and the request was denied on January 30, 2008.[15]

---

[11]St. Rec. Vol. 1 of 13, Minute Entry, 10/12/07; St. Rec. Vol. 4 of 13, Post-Conviction Hearing Transcript, 8/31/07.

[12]St. Rec. Vol. 1 of 13, Trial Court Judgment, 10/12/07; Minute Entry, 8/31/07; St. Rec. Vol. 4 of 13, Post-Conviction Hearing Transcript, 10/12/07.

[13]St. Rec. Vol. 1 of 13, 4th Cir. Writ Application, 2007-K-1413, 1/3/08.

[14]St. Rec. Vol. 1 of 13, 4th Cir. Order, 2007-K-1413, 1/3/08.

[15]St. Rec. Vol. 13 of 13, Application for Rehearing, 2007-K-1413, 1/15/08; St. Rec. Vol. 13 of 13, 4th Cir. Notice, 1/30/08.

On February 27, 2008, Smith's counsel filed a writ application with the Louisiana Supreme Court challenging the appellate court's ruling.[16] The court denied the application without reasons on March 6, 2009.[17]

## II.   FEDERAL HABEAS PETITION

On May 29, 2009, the clerk of this court filed Smith's petition for federal habeas corpus relief in which Smith alleges that his trial counsel provided ineffective assistance.[18] In support of this claim, Smith presents three arguments: (1) He met his burden of proof at the state court evidentiary hearing to show that his attorney failed to investigate his claim properly and that the inadequate investigation prejudiced the case. (2) The Louisiana Fourth Circuit applied an erroneous standard of law and an erroneous interpretation of the Constitution on the issue of ineffective assistance of counsel. (3) Counsel provided ineffective assistance regarding presentation of the medical evidence about his prior knee problems.

## III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[16]St. Rec. Vol. 13 of 13, La. S. Ct. Writ Application, 08-KP-0442, 2/27/08.

[17]State v. Smith, 3 So.3d 474 (La. 2009); St. Rec. Vol. 13 of 13, La. S. Ct. Order, 2008-KP-0442, 3/6/09.

[18]Rec. Doc. Nos. 1, 9.

including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996[19] and applies to habeas petitions filed after that date. <u>Flanagan v. Johnson</u>, 154 F.3d 196, 198 (5th Cir. 1998) (citing <u>Lindh v. Murphy</u>, 521 U.S. 320 (1997)). The AEDPA therefore applies to Smith's petition, which, for reasons discussed below, is deemed filed in this federal court on April 9, 2009.[20]

The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claims raised by the petitioner were adjudicated on the merits in state court; <u>i.e.</u>, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

---

[19]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. <u>United States v. Sherrod</u>, 964 F.2d 1501, 1505 (5th Cir. 1992).

[20]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. <u>Coleman v. Johnson</u>, 184 F.3d 398, 401 (5th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1057 (2000); <u>Spotville v. Cain</u>, 149 F.3d 374, 378 (5th Cir. 1998); <u>Cooper v. Brookshire</u>, 70 F.3d 377, 379 (5th Cir. 1995). Smith's petition was filed by the clerk of court on May 29, 2009, when the filing fee was paid. Smith's original packet of pleadings was received by the clerk of court on April 28, 2009. Rec. Doc. No. 1, p.10. Smith's signature on those pleadings was dated April 9, 2009. This is the earliest date on which he could have delivered the pleadings to prison officials for mailing. According to the record, the form petition was signed and submitted to the clerk by Smith at a later date. I do not consider that to have effected the date of his original submission. Furthermore, the fact that he paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. <u>See Cousin v. Lensing</u>, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing <u>Spotville</u>, 149 F.3d at 374).

In this case, the State argues that Smith's petition was not timely filed in this federal court. I find, however, that although Smith's federal petition was timely filed, it must nevertheless be dismissed as meritless.

IV.    SMITH'S FEDERAL PETITION WAS TIMELY FILED

The AEDPA requires a petitioner to bring his Section 2254 petition within one year of the date his conviction became final.[21] Duncan v. Walker, 533 U.S. 167, 179-80 (2001). Smith's conviction became final on April 10, 2006, which was 90 days after the Louisiana Supreme Court denied his writ application filed after the direct appeal.

---

[21]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--

A.    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

B.    the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

C.    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

D.    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. 28 U.S.C. § 2244(d).

Thus, under a literal application of the statute, Smith had one year from the date his conviction became final, or until April 10, 2007, to file his federal habeas corpus petition, which he did not do. His petition must be dismissed as untimely, unless the one-year statute of limitations period was interrupted or otherwise tolled in either of the following two ways recognized in the applicable law.

The AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings. Flanagan, 154 F.3d at 199 n.1. The Supreme Court has clearly described this provision as a tolling statute. Duncan, 533 U.S. at 175-178.

The decisions of the Fifth Circuit and other federal courts cited herein have held that because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the

one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.

Flanagan, 154 F.3d at 199 n.1; accord Brisbane v. Beshears, 161 F.3d 1, 1998 WL 609926 at *1 (4th Cir. Aug. 27, 1998) (Table, Text in Westlaw); Gray v. Waters, 26 F. Supp.2d 771, 771-72 (D. Md. 1998).

For a post-conviction application to be considered "properly filed" within the meaning of Section 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing requirements,'" such as timeliness and location of filing. Pace, 544 U.S. at 414 ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); Williams v. Cain, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting Villegas v. Johnson, 184 F.3d 467, 469 (5th Cir. 1999)); Smith v. Ward, 209 F.3d 383, 384-85 (5th Cir. 2000). The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings. Causey v. Cain, 450 F.3d 601, 604-05 (5th Cir. 2006).

A matter is "pending" for Section 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'" Carey v. Saffold, 536 U.S. 214, 219-20 (2002); Williams, 217 F.3d at 310 (a matter is "pending" for Section 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. Dillworth v. Johnson, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); Nara v. Frank, 2001 WL 995164, slip opinion at *5 (3rd Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review"). A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition. Godfrey v. Dretke, 396 F.3d 681, 686-88 (5th Cir. 2005).

The one-year AEDPA limitations period began to run in Smith's case on April 11, 2006, the day after his conviction was final. The limitations period ran uninterrupted for 50 days, until May 31, 2006, when Smith filed his application for post-conviction relief in the state trial court. This application remained pending for AEDPA purposes until March 6, 2009, when the Louisiana Supreme Court denied the related writ application.

The State argues that the Louisiana Supreme Court writ application was not timely filed and therefore does not provide Smith with any tolling benefit. The State's argument, however, overlooks the fact that Smith's counsel sought rehearing after the

12

Louisiana Fourth Circuit granted the state's post-conviction writ application. The record reflects that, on January 3, 2008, the Louisiana Fourth Circuit granted the State's application and reversed the trial court's granting of the new trial. The court later refused Smith's request for rehearing on January 30, 2008.[22]

Pursuant to La. Code Crim. P. art. 922 and La. S. Ct. R. X§5, Smith had 30 days from the denial of the application for rehearing to file a writ application in, or mail one to, the Louisiana Supreme Court. His counsel hand delivered the writ application to the Louisiana Supreme Court on February 27, 2008.[23] The timely filing enures to Smith's benefit and continues the tolled period through resolution of that application on March 6, 2009, as outlined above.

Thereafter, Smith allowed only another 33 days to pass before he submitted his federal petition to this court for filing. Therefore, only 83 days of the one-year AEDPA filing period lapsed before Smith is considered to have filed his federal petition under the applicable "mailbox rule" by handing it to prison officials for mailing to the court. His federal petition is therefore timely and the State's limitations defense is rejected.

---

[22]St. Rec. Vol. 13 of 13, 4th Cir. Notice, 1/30/08.

[23]See St. Rec. Vol. 1 of 13, La. S. Ct. Letter, 2008-KP-442, 2/27/08 (hand delivery 2/27/08); St. Rec. Vol. 13 of 13, La. S. Ct. Writ Application, 08-KP-0442, 2/27/08 ("DELIVERED BY HAND").

V.    STANDARDS OF A MERITS REVIEW

Amended 28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  Nobles, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), cert. denied, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)),  aff'd in part, rev'd in part on other grounds, 532 U.S. 782 (2001); Hill, 210

F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1)

standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;

Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because

that court concludes in its independent judgment that the state court decision applied [a

Supreme Court case] incorrectly.'"  Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting

Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone,

535 U.S. 685, 699 (2002).  Rather, under the "unreasonable application" standard, "the

only question for a federal habeas court is whether the state court's determination is

objectively unreasonable."  Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert.

denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to

show that the state court applied the precedent to the facts of his case in an objectively

unreasonable manner.  Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25);

Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

VI.    INEFFECTIVE ASSISTANCE OF COUNSEL

The issue of ineffective assistance of counsel is a mixed question of law and fact. Motley v. Collins, 18 F.3d 1223, 1226 (5th Cir. 1994).  Thus, the question before this court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, United States Supreme Court precedent.

Smith argues that the Louisiana Supreme Court erred by using the incorrect legal standard to deny his ineffective assistance of counsel claim and that he presented sufficient evidence at the state evidentiary hearing to establish the claim.

Smith first raised his ineffective assistance of counsel claim in an application for post-conviction relief. Smith argued to the state court that his trial counsel provided ineffective assistance when he failed to subpoena medical records or his doctor to confirm that Smith was incapable of running from the crime scenes, as the perpetrator did.

After receiving testimony at an evidentiary hearing, the state trial court granted relief, finding that the medical records of Smith's prior knee problems "would have been very helpful to his defense."[24]  The court briefly summarized the medical records, which were found to show that, on September 17, 2002, Smith appeared at Charity Hospital of New Orleans complaining of pain in his left leg.  He had plates, rods, and screws in the

---

[24]St. Rec. Vol. 1 of 13, Trial Court Judgment, 10/12/07.

knee because of a prior motorcycle accident. He also was seen in the hospital on December 4, 2002, seven months before the armed robberies, with gun shot wounds to his right thigh, his right ankle, and his left knee. He underwent surgery and additional rods were placed in his left leg. The court also took notice of the fact that doctors at the Louisiana State Penitentiary believed that Smith was incapable of participating in athletic activity.

Based on these findings, the trial court resolved that the medical records would have corroborated the trial testimony given by Smith's girlfriend, Gwen Campbell, who testified that Smith walked with a limp and could not run. The court also found that the agility of the perpetrator and his ability to run from the scene were important factors at trial. For these reasons, the trial court held that counsel's performance was deficient and prejudicial under the standards set forth in Strickland v. Washington, 466 U.S. 668 (1984). The court granted Smith a new trial based on these findings.

On review of this ruling, the Louisiana Fourth Circuit found that the medical records from the hospital and the prison did not reflect that Smith "was physically incapable of running at the time of the crime" or while in prison.[25] On the contrary, the state appellate court found that the prison records showed that Smith could run, although it caused him problems. The court further found the lower court's findings inconsistent

---

[25]St. Rec. Vol. 1 of 13, 4th Cir. Order, 2007-K-1413, 1/3/08.

with Campbell's testimony, which described Smith as having "pain with activity, not a person who was disabled."[26] The court also noted that Smith had not presented any post-conviction testimony from a doctor to indicate that he was physically incapable of running.

In reaching its decision to reverse, the Louisiana Fourth Circuit held that the trial court had erroneously evaluated the performance of counsel "with twenty-twenty hindsight," instead of giving deference to counsel's trial strategy, which focused on the alibi witness and exploiting the victims' identifications. The court also found that the trial court failed to hold Smith to his burden of presenting a witness who could state with medical certainty that he was incapable of running at the time of the crimes. Based on these errors, the appellate court reversed the lower court's new trial order. This was the last reasoned decision on the issue, since the Louisiana Supreme Court denied Smith's subsequent writ application without reasons. Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).

The constitutional standard for evaluating the performance of counsel was established by the United States Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984), which the state courts cited. In Strickland, the United States Supreme Court established a two-part test for evaluating claims of ineffective assistance of counsel in

---

[26]Id.

which the petitioner must prove deficient performance and resulting prejudice. Strickland, 466 U.S. at 697. The Supreme Court first held that "the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-88. Second, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694; United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999).

In deciding ineffective assistance of counsel claims, this court need not address both prongs of the conjunctive Strickland standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. Kimler, 167 F.3d at 893. A habeas corpus petitioner "need not show that 'counsel's deficient conduct more likely than not altered the outcome in the case.' It is not enough, however, under Strickland 'that the errors had some conceivable effect on the outcome of the proceeding.'" Motley, 18 F.3d at 1226 (quoting Strickland, 466 U.S. at 693).

On federal habeas review, scrutiny of counsel's performance "must be highly deferential," and the court will "indulge a strong presumption that strategic or tactical decisions made after an adequate investigation fall within the wide range of objectively reasonable professional assistance." Moore v. Johnson, 194 F.3d 586, 591 (5th Cir. 1999) (citing Strickland, 466 U.S. at 689-90). In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of

hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. Strickland, 466 U.S. at 689; Neal, 286 F.3d at 236-37; Clark v. Johnson, 227 F.3d 273, 282-83 (5th Cir. 2000), cert. denied, 531 U.S. 1167 (2001). "A court must indulge a 'strong presumption' that counsel's conduct falls within the wide range of reasonable professional assistance because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." Bell, 535 U.S. at 697 (citing Strickland, 466 U.S. at 689).

This court must apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 690. Federal courts have consistently recognized that tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance. Lamb v. Johnson, 179 F.3d 352, 358 (5th Cir. 1999), cert. denied, 528 U.S. 1013 (1999) (citing Rector v. Johnson, 120 F.3d 551, 564 (5th Cir. 1997) and Mann v. Scott, 41 F.3d 968, 983-84 (5th Cir. 1994)). Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689; Moore, 194 F.3d at 591. The burden is on petitioner to demonstrate that counsel's strategy was constitutionally deficient. Id.

Smith argues that his counsel failed to subpoena his doctor or obtain his medical records that would have shown that he could not have been the man who ran from the two armed robberies. However, "'[c]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative.'" Graves v. Cockrell, 351 F.3d 143, 156 (5th Cir. 2003) (quoting Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)). "'Failure to present [evidence does] not constitute 'deficient' performance within the meaning of Strickland if [counsel] could have concluded, for tactical reasons, that attempting to present such evidence would be unwise.'" Williams v. Cockrell, 31 Fed. Appx. 832 (5th Cir. 2002) (quoting Williams v. Cain, 125 F.3d 269, 278 (5th Cir. 1997)).

In this case, Smith has failed to present any statement or affidavit by his doctor which would indicate that he would have testified as Smith's suggests. Smith's presumption that the doctor would have testified that he was incapable of running is not sufficient to establish his ineffective assistance of counsel claim. He has not shown his entitlement to relief based on the failure to subpoena the doctor.

Instead, to support his argument, Smith refers the court to medical records which were submitted to the state courts on post-conviction review. He claims that these

records should have been subpoenaed for trial and presented to the jury to support a defense that he could not have run from the crime scenes.

The record is clear that Smith's trial counsel pursued a defense, based on Gwen Campbell's testimony, that Smith was with her and her sick child during the two days when the armed robberies occurred.[27]  Counsel also challenged the identifications made by the victims to show that they did not match Smith's actual physical appearance, including height, weight, hairstyle, facial hair and tattoos.[28]

At the post-conviction hearing, trial counsel testified that the alibi defense did not hinge on whether the perpetrator had a limp, because the chosen strategy was to convince the jury that Smith was somewhere else.[29]  Counsel also had no recollection of Smith asking him to subpoena the medical records, a doctor, or his parole officer to address his knee problems.[30]  He otherwise did not recall why he may have decided not to subpoena the medical records, except that it was not the basis for the alibi defense.[31]

---

[27]St. Rec. Vol. 2 of 13, Trial Transcript, pp. 15-16, 11/17/03.

[28]Id., pp. 11-13.

[29]St. Rec. Vol. 4 of 13, Post-Conviction Hearing Transcript, p.13, 8/31/07.

[30]Id., pp. 13-15.

[31]Id.

The trial transcript reflects that counsel questioned one of the victims about whether the perpetrator had a limp, and the victim could not recall.[32]   Counsel also questioned Campbell, Smith's girlfriend, who testified that Smith had a prior motorcycle accident and gunshot wounds to his legs, which she said left him with "a little limp in one of his legs."[33]   When asked whether Smith could run, she testified "not that I know of . . . because . . . he had pain every night."[34]

It is fair to conclude, based on the verdict, that the jury did not find Campbell's testimony to be credible.  This is likely based in part on her testimony regarding the sick child.  As noted above, Campbell's detailed recollection of the times and events on the two days in July 2003, revolved around "their" sick infant child.  Campbell testified that Smith was the baby's father, and he was dutifully with her day and night to help with the child.[35]   She later conceded on cross-examination, however, that she was suing another man for child support for that same child, and she was unsure who the biological father was.[36]   Had counsel known that Campbell's story was questionable, perhaps he would

---

[32]St. Rec. Vol. 2 of 13, Trial Transcript, p. 87, 11/17/03 (Joseph Lee).

[33]Id., pp. 104-105 (Gwendolyn Campbell).

[34]Id., p. 105.

[35]Id., pp. 99-102.

[36]Id., pp. 115-116.

have pursued another line of defense.  Hindsight, however, is not the standard by which counsel's actions are to be judged today.

Instead, under <u>Strickland</u>, the standard is whether it was unreasonable at the time for counsel to have failed to obtain the medical records and if that decision was unconstitutionally prejudicial to Smith's case.  The medical records, on which Smith bases his claim, do not in any way demonstrate that Smith was incapable of running in July 2003.  As resolved by the Louisiana Fourth Circuit, the records do not contain any medical finding that Smith could not run in 2003 or anytime thereafter.[37]  The medical records from Charity Hospital contain no entries after he was released from the hospital to show how Smith's legs progressed after the surgery in December of 2002.

The only other records are from the Louisiana State Penitentiary, and they are dated <u>after</u> the trial.  To whatever extent, if any, that these records are relevant to counsel's performance at trial, they also fail to demonstrate that Smith was incapable of running, and they do not confirm that he necessarily walked with a limp.  A review of those records shows that Smith made subjective complaints to the prison in 2005 about discomfort for purposes of his duty status.  The prison records, however, also contain an entry dated September 28, 2004, in which the medical examiner noted that Smith's

---

[37]St. Rec. Vol. 4 of 13, Medical Records from 9/17/02 incident; Medical Records from 12/5/02 incident; Medical Records from the Louisiana State Penitentiary, 2004 to 3/14/07.

ambulation and movement were within normal limits.[38]  In another entry dated April 25, 2005, a prison physician indicated that Smith "ambulates normally."[39]  These records do not support a conclusion that Smith was incapable of running[40] or that the fact finding of the Louisiana appellate court should not be given deference.

After review of the medical records and the trial and hearing transcripts, I find that Smith has not shown that his counsel's performance was deficient because of the failure to obtain the medical records of his knee problems.  Smith has failed to show that he was prejudiced at trial by counsel's failure to obtain those records.  The records do not support a defense that he was incapable of running from the crime scenes.

For these reasons, the denial of relief on this issue was not contrary to <u>Strickland</u>, or an unreasonable application of Supreme Court precedent.  Smith is not entitled to relief.

---

[38]St. Rec. Vol. 4 of 13, Medical Form, 9/28/04.

[39]St. Rec. Vol. 4 of 13, Physician's Clinic Notes, 4/25/05.

[40]"No running" was ordered much later in his duty status dated December 19, 2006. St. Rec. Vol. 4 of 13, Temporary Duty Status, 12/19/06.

## RECOMMENDATION

It is therefore **RECOMMENDED** that the petition of Joseph Smith for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[41]

New Orleans, Louisiana, this ___11th___ day of December, 2009.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[41]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.